UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| LUMBER SALES COMPANY, LLC, | ) | Case No. 605-60754-fra7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ERIC R.T. ROOST, TRUSTEE, | ) | Adv. Proc. No. 05-6133-fra |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUMBER SOURCE, INC., | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

## FACTS

The Plaintiff is the trustee of the estate of Lumber Sales Company, LLC. The Complaint alleges that beginning in July 2000, Washington Mutual Bank made five loans to Lumber Sales totaling $560,000. The loans were not repaid and the Debtor and Washington Mutual entered into a loan consolidation agreement

Memorandum Opinion - 1

whereby the maturity date of all the loans was 3/31/04. The sole owner of the Debtor, Alan Mayer, formed a corporation named Lumber Source, Inc. on 3/10/04, of which Mr. Mayer was the sole initial stock holder, officer, and director. Lumber Source was to be initially capitalized at $2,000 (price of stock issued to Mr. Mayer), but the amount was not paid into Lumber Source by Mr. Mayer. Lumber Source had the same address as Lumber Sales, used the same office equipment and furnishings, and used the same telephone and fax numbers. Lumber Source also used and continues to use Lumber Sales' equipment and rolling stock without direct compensation to Lumber Sales, sold most of the inventory of Lumber Sales, and has taken business opportunities that would otherwise have gone to Lumber Sales.

The Complaint asserts that Lumber Source is a mere successor to Lumber Sales, and that Lumber Source and its assets, if any, is subject to all of the liabilities of Lumber Sales. The Complaint seeks a declaration that Lumber Source, Inc. is a successor corporation of Lumber Sales, LLC and is liable for the debts of Lumber Sales, LLC. It seeks a judgment ordering Lumber Source to turn over its property and income to the Trustee for disposition and distribution in the Chapter 7 case.

Plaintiff filed a motion for summary judgment on all his claims, along with the required Concise Statement of Material Facts. Two additional Concise Statements of Fact were thereafter

filed, one in conjunction with a supplemental motion for summary judgment. Defendant filed responses to the Concise Statements in which it generally admitted the facts presented by Plaintiff, but denied that assets were transferred from Lumber Sales to Lumber Source. An additional fact was introduced by Defendant through an affidavit by Mr. Mayer: In August 2004, an outside party purchased 80% of the stock of Lumber Source, Inc. for $8,000 and was elected director and president of the corporation. She also loaned the business $62,500.

Mr. Mayer's admitted purpose in incorporating Lumber Source was to protect the assets of Lumber Sales, LLC and "stay" litigation by creditors so that he "could continue in the business." He intended to create a new entity which would be more viable because it would not be saddled with the old debts of Lumber Sales, LLC.

The supplemental motion for summary judgment, based on facts not known by Plaintiff at the time the motion for summary judgment was first filed, involves an administrative court ruling by the Office of Administrative Hearings for the Oregon Employment Department. Plaintiff argues that the ruling established that Lumber Source is the successor to Lumber Sales, and that the ruling has preclusive effect in this proceeding.

/ / / / /

/ / / / /

SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Fed.R.Bankr.P. 7056, which incorporates Federal Rule of Civil Procedure 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of

Memorandum Opinion - 4

material fact for trial. Absent such response, summary judgment shall be granted if appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 326-27 (1986).

## DISCUSSION

A. <u>Successor Liability</u>

The Trustee asserts a claim against Defendant under the doctrine of successor liability. Under Oregon law:

> The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. . . .
>
> To this general rule there are four well recognized exceptions under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

Erickson v. Grande Ronde Lumber Co. et al., 162 Or. 556, 568, 92 P.2d 170, 174 (1939)(citing West Texas Refining & Development Co. v. Comm. of IRS, 68 F.2d 77, 81 (10th Cir. 1933)). While the Plaintiff argues that all four exceptions apply, he has advanced an argument and supplied facts pointing primarily to exceptions (2) and (3). The determining factors for these claims have been described as follows:

> "To determine whether such a 'de facto merger' or 'mere continuation' of the predecessor's business has occurred, courts consider (1) continuity of ownership;

Memorandum Opinion - 5

> (2) cessation of ordinary business by the predecessor;
> (3) assumption by the successor of liabilities
> ordinarily necessary for continuation of the
> predecessor's business; and (4) continuity of
> management, personnel, physical location, assets, and
> general business operation." <u>Nettis v. Levitt</u>, 241
> F.3d 186, 193-94 (2d Cir.2001) (citations omitted). The
> determination of successor liability is
> "fact-specific," <u>Ryan, Beck & Co. v. Fakih</u>, 268
> F.Supp.2d 210, 229 (E.D.N.Y.2003), and courts are to
> analyze the facts "in a flexible manner that disregards
> mere questions of form and asks whether, in substance,
> it was the intent of [the successor] to absorb and
> continue the operation of [the predecessor]." <u>Nettis</u>,
> 241 F.3d at 194 (citations omitted).

<u>Miller v. Forge Mench Partnership, Ltd.</u>, 2005 WL 267551, p.7 (S.D.N.Y. 2005).

B. <u>Final Order of the Employment Department</u>

On June 21, 2004, the Oregon Employment Department issued a Notice of Determination to Lumber Source, Inc. in which it stated that, from the information it had obtained, Lumber Source, Inc. is the successor employer to Lumber Sales Co, LLC. As such, the employment experience of Lumber Sales would be transferred to Lumber Source pursuant to ORS 657.480, along with the tax rate of 3.5%. If Lumber Source had been a new employer, it would have incurred a tax rate of 3.3%. Mr. Mayer timely requested a hearing before the Office of Administrative Hearings for the Employment Department and a hearing was set for February 1, 2005. At that hearing before an Administrative Law Judge (ALJ), the Employment Department appeared and testimony was given. Exhibits

Memorandum Opinion - 6

and documents were received into evidence. No appearance was made by Lumber Source, Inc.

On February 16, 2005, the ALJ issued a Final Order containing the following findings of fact:

> (1) Lumber Sales Company, LLC filed documents with the State of Oregon registering the business. Alan Mayer and Elise Mayer were principals of that business. The business had an operating address of 339 Taylor in Eugene, Oregon. In 2002, the company changed its address to 90939 Prairie Road in Eugene.
> * * *
>
> (3) On April 20, 2004, Lumber Source, Inc. acquired all of the assets of Lumber Sales Company, LLC, and took over the operation at 90939 Prairie Road. Mr. Mayer is a principal of that corporation.
>
> (4) Lumber Source, Inc. filed a combined employer's registration form stating the business started April 20, 2004, but that the business had not acquired the assets of an ongoing business.
>
> (5) The Employment Department reviewed the registration form. A representative of the Employment Department called Lumber Source, Inc. and spoke with a woman who said she was in charge of payroll, Becky. Becky told the Employment Department representative that all of the operations had continued, and had rolled in to the new firm.
>
> (6) Lumber Source, Inc. filed a report with the Employment Department reporting 12 employees worked for that business during the second quarter of 2004. These were the same 12 employees who had worked for Lumber Sales, LLC.
>
> (7) After reviewing the information and determining that Lumber Source, Inc. was operating the same business which had been operated by Lumber Sales LLC, and that there had been no period of inactivity before the transition, the Employment Department issues a Notice of Determination stating Lumber Source, Inc. was a successor employer, imposing the tax rate which had been calculated based on Lumber Sales LLC's experience.

Memorandum Opinion - 7

(8) Mr. Mayer requested a hearing. On August 25, 2004, Mr. Mayer spoke with an Employment Department representative and explained that Lumber Sales LLC had a lot of debt, and had lost its line of credit. Mr. Mayer explained that Lumber Source Inc. acquired the assets, including blue sky and stock. Mr. Mayer stated there had been no period of inactivity between the two businesses, and that employees that wished to stay on with the new company did.

(9) On September 17, 2004, Mr. Mayer again spoke with an Employment Department representative. Mr. Mayer then told the Employment Department representative that he continued the old business under the new structure at Prairie Road after the transition.

(10) During the first quarter of 2004, Lumber Sales LLC had a payroll of $73,730. During the second quarter of 2004, the LLC and corporation had combined payroll of about $75,000. During the third quarter of 2004, Lumber Source Inc. had a payroll of $73,730.

In concluding that Lumber Source, Inc. should assume the experience and tax rate of Lumber Sales, LLC because Lumber Source, Inc. had "acquired the entire employing enterprise of a predecessor employer" pursuant to ORS 657.480, the ALJ stated that

> all of the evidence submitted indicates that although the structure of the business changed from an LLC to a corporation, the business continued. There was no change in location. There was no change in the nature of the business. The employees stayed on. While creating a new entity for business reasons is oftentimes advisable for tax of [sic] debt structure purposes, the changing of a business from an LLC to a corporation does not in any way alter the analysis in regard to successorship.

"Entire employing enterprise and all its incidents" for purposes of ORS 657.480 is defined at OAR 471-031-0140 as "all of the employing enterprise necessary to carry on the business in

Memorandum Opinion - 8

the same manner as was done immediately prior to the transfer. If at the time of purchase or transfer the acquired employing entity is inactive, no successorship or transfer of experience shall be allowed."  Implicit in the ruling, then, is a finding that Lumber Sales, LLC was active at the time of the transfer.

C. <u>Collateral Estoppel (Issue Preclusion)</u>

In determining whether collateral estoppel applies in bankruptcy court to prevent relitigation of an issue decided in a state-court forum, the bankruptcy court must look to the law of the state where the judgment sought to be given preclusive effect was initially entered. The federal court must give the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. <u>West Coast Theater Corp. v. City of Portland</u>, 897 F.2d 1519, 1525 (9th Cir. 1990).

In Oregon, five requirements must be met before an issue formerly adjudicated may be precluded from relitigation in another proceeding:

1) The issue in the two proceedings is identical.
2) The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
3) The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

Memorandum Opinion - 9

4) The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5) The prior proceeding was the type of proceeding to which this court will give preclusive effect.

Hickey v. Settlemier, 318 Or. 196, 201-202, 864 P.2d 372, 375 (1993) (quoting Nelson v. Emerald People's Utility Dist., 318 Or. 99, 104, 862 P.2d 1293, 1296-97 (1993)).

In Drews v. E.B.I. Companies, 310 Or. 134, 139-40, 795 P.2d 531, 535 (1990), the Oregon Supreme Court clarified that issue preclusion may apply to an issue of law or an issue of fact(citing Restatement (Second) of Judgments, § 27).

The Defendant urges the court to adopt the holding in Sixteen Twenty Eight Bellvue L.P. v. Barigian (In re Barigian), 72 B.R. 407 (Bankr. C.D.Cal. 1987). In that opinion, which involved an arbitration proceeding, the court held that the standards employed by a state court in reaching its decision must comport with federal standards before a federal court can give collateral estoppel effect to any issues necessarily decided in the state forum. Because the arbitrator was not bound to follow rules of evidence substantially in compliance with the Federal Rules of Evidence, the court held that the bankruptcy court was not bound by the arbitration judgment.

The Barigian holding does not appear to have been widely adopted. See Norrell Health Care, Inc. v. Clayton (In re

Memorandum Opinion - 10

Clayton), 168 B.R. 700, 705 (Bankr. N.D.Cal. 1994)("as far as this court is aware, no other court has cited Bariqian for precedent in this context"). In holding for the preclusive effect of an arbitration judgment, the Clayton court noted "that rigorous application of [the] proposed test would lead to the disqualification of many state court judgments from receiving full faith and credit with federal courts." Clayton at 705. Given the fact that the Ninth Circuit has instructed federal courts within its jurisdiction to look to the law of the state in which the judgment was rendered to determine the preclusive effect of a state-court judgment, this court likewise declines to adopt the test proposed in Bariqian.

D. Application of Collateral Estoppel Requirements to Final Order

    1) Identical Issues

While the reasons for the matter being brought before the state administrative court and the bankruptcy court were different, the issue in the two proceedings is the same: Is Lumber Source, Inc. the successor to Lumber Sales, LLC.? The Employment Department determined that when Lumber Source was formed, the operations of Lumber Sales were essentially transferred to it. The Final Order found that Lumber Source acquired the assets of Lumber Sales. There was no period of inactivity in the business and all the employees who had worked

Memorandum Opinion - 11

for Lumber Sales became employees of Lumber Source. There was no change in either the location or the nature of the business.

While the Final Order did not make specific findings regarding each of the factors a court may consider in determining "mere continuation" as set forth in Nettis v. Levitt, 231 F.3d at 193-194, it is clear that the ALJ determined that "in substance, it was the intent of [Lumber Source] to absorb and continue the operation of [Lumber Sales]." Nettis at 194.

    2) Actually Litigated

Generally, an issue is actually litigated when it is properly raised by the pleadings, or is otherwise submitted for determination and is determined. Restatement (Second) of Judgments § 27, Comment d. I find that the issue was actually litigated and was essential to a final decision on the merits in the Employment Department proceeding. The issue of successorship was brought before the ALJ at the request of Mr. Mayer. At the hearing, testimony was given and exhibits and documents were received into evidence. Based on the evidence received, the ALJ issued a Final Order determining that Lumber Source is the successor employer to Lumber Sales. The issue of successorship was essential to the final decision because the employment tax rate was dependent on the outcome.

### 3) Full and Fair Opportunity to be Heard

A full and fair opportunity to be heard requires that the "parties had both a full opportunity and the incentive to contest the point at issue on a record that was subject to judicial review." Chavez v. Boise Cascade Corp., 307 Or. 632, 635, 772 P.2d 409 (1989). Mr. Mayer disputed the Employment Department's initial determination and requested a hearing before the Office of Administrative Hearings. Mr. Mayer and Lumber Source, Inc. received notice of the hearing and were invited to present evidence and testimony. At issue was whether the employment experience would carry over from Lumber Sales to Lumber Source and the employment tax rate that would be applied. This evidences sufficient incentive to contest the issue, especially given the fact that Mr. Mayer was the one who requested the hearing.

Attached to the Final Order of the Employment Department is a notice of the parties' appeal rights. An aggrieved party may file, within 20 days of the date the Final Order is mailed, a petition for judicial review to the Oregon Court of Appeals. Final Order, page 5. Mr. Mayer chose not to appeal the decision. Response to Plaintiff's Supplemental Concise Statement of Facts #7 and #8.

4) Party to be Precluded Was Party in Earlier Proceeding

Lumber Source, Inc. was a party in the prior Employment Department proceeding.

5) Prior Proceeding Type of Proceeding to Which Preclusion Given

> Whether an administrative decision has a preclusive effect depends on: (1) whether the administrative forum maintains procedures that are "sufficiently formal and comprehensive"; (2) whether the proceedings are "trustworthy"; (3) whether the application of issue preclusion would "facilitate prompt, orderly and fair problem resolution"; and (4) whether the "same quality proceedings and the opportunity to litigate is present in both proceedings."

Nelson, 318 Or. at 104, n.4 (internal citations omitted).

An administrative hearing in the Employment Department regarding the unemployment tax rate for an employer is conducted as a contested case hearing before an administrative law judge assigned from the Office of Administrative Hearings. ORS 657.485(5). Contested case hearings before an administrative law judge assigned from the Office of Administrative Hearings follow the model rules of procedure found at OAR 137-003-501 to OAR 137-003-700. ORS 183.630(1)[1]. I find that these procedures are

---

[1] ORS 183.630(1) and (2) provide that, unless the Attorney General exempts an agency from requirements of the model rules of procedure, all contested case hearings conducted by an administrative law judge assigned from the Office of Administrative Hearings must be conducted pursuant to the Attorney General's model rules of procedure. Only minor exemptions relating to requests for postponement and filing dates were granted to the Employment Department. See OAR 471-040-0021.

Memorandum Opinion - 14

"sufficiently formal and comprehensive" and that the hearings are conducted in such a manner as to be "trustworthy." The model rules of procedure allow for notice, discovery, representation by an attorney, ability to call and subpoena witnesses, protection from ex parte communications. Motions for reconsideration may be filed and an aggrieved party has rights to appeal and may request a stay pending appeal. The same quality of proceedings and opportunity to litigate is present in both the contested case hearing and in the courts. Finally, application of issue preclusion would facilitate the prompt resolution of the matter before the court.

E. <u>Other Material Facts</u>

More specific findings can be made from the submissions before the bankruptcy court:

<u>Uncontested Facts</u>

(1) Ownership of the successor business remained in the sole hands of Mr. Mayer, until an outside investor was brought in. Response to Concise Statement of Material Facts (Response) #8.

(2) The business of Lumber Sales was discontinued or "wound down" shortly after the formation of Lumber Source. Responses #4, #24. Mayer Affidavit ¶ 25.

(3) Lumber Source liquidated inventory and accounts receivable of Lumber Sales and the proceeds of the accounts receivable were applied to accounts payable of Lumber Sales.

Memorandum Opinion - 15

Response #13. The reason that certain of Lumber Sales' debts were repaid was to maintain credibility with suppliers doing business with Lumber Source. Response #26.

(4) At the time Lumber Source began operations, it used the same business address, same office space, same office equipment and furnishings, same phone and fax number, and the same mailing address as Lumber Sales. Response #12.

(5) Mr. Mayer's intent in creating Lumber Source, Inc. was to avoid payment of Lumber Sales' debts so that he could "stay in the business" and the new entity would not be saddled with old debts of Lumber Sales. Responses #3 - #5.

(6) Mr. Mayer expected that Washington Mutual Bank would, once the business was no longer liable for old debts, extend to Lumber Source a line-of-credit to allow the business to continue operating. Responses #4 - #6.

(7) Instead of paying Lumber Sales directly on the unwritten lease of equipment and rolling stock that had been formerly used by Lumber Sales and thereafter was used by Lumber Source, Lumber Source paid certain creditors of Lumber Sales directly, Responses #17 to #20, although no records have been produced to show the amounts paid or amounts due on the unwritten lease. Response # 22.

(8) Real property in Eugene and in Sisters which had been rented by Lumber Sales was "switched over" to Lumber Source. Response #23.

(9) In April 2004, Mr Mayer wrote that a business opportunity with the potential for gross sales in excess of $10 million was being pursued by Lumber Source. The opportunity was not being pursued by Lumber Sales because the latter was no longer a viable company. Response #24.

Transfer of Assets

By a Second Supplemental Concise Statement of Facts, and based on journal entries and a summary prepared by an accountant working for Lumber Source, Plaintiff provided evidence of the transfer of assets from Lumber Sales to Lumber Source in March 2004.

An affidavit was thereafter provided from the accountant to the effect that the journal entries for the transfer of assets never occurred because the expected transaction with Washington Mutual (i.e. an operating line-of-credit) never occurred. Plaintiff thereafter filed a motion to strike the accountant's affidavit under the Ninth Circuit's "sham affidavit rule," which provides that a party cannot create an issue of fact to avoid summary judgment by an affidavit contradicting his prior deposition testimony.

Memorandum Opinion - 17

Whether a formal journal entry transferring assets from Lumber Sales to Lumber Source was entered does not change the fact that Lumber Sales ceased operations and its assets were not sold or otherwise disposed of. In fact, Lumber Source continued to use the assets of Lumber Sales and liquidated its inventory. Proceeds from Lumber Sales' accounts payable were used to pay some of Lumber Sales' trade creditors, but no records were kept as to the amounts collected or paid to creditors. Response to initial Concise Statement of Material Facts #11, #13, #14, #15. Lumber Sales' rolling stock and equipment continued to be used by Lumber Source under an unwritten agreement that compensation to Lumber Sales would be from the payments made to certain of Lumber Sales' creditors, although payment to Lumber Sales' creditors benefitted Lumber Source, as Lumber Source wanted to continue to do business with certain of those creditors. Mayer Affidavit, Exh 1, pages 11-13; Responses #17 - #20, #26. Leases of real property were switched from Lumber Sales to Lumber Source. Lumber Sales transferred the dba registration of Industrial Trucking to Lumber Source for no consideration. Response #25. It is clear that a transfer of assets did occur from Lumber Sales to Lumber Source, whether by formal notation or otherwise.

/ / / / /

/ / / / /

/ / / / /

Memorandum Opinion - 18

CONCLUSION

The Final Order of the Administrative Law Judge in the hearing between Lumber Source and the Department of Employment established for purposes of the present proceeding that the assets of Lumber Sales, LLC were transferred to Lumber Source, Inc. and that Lumber Source, Inc. is the successor business of Lumber Sales, LLC. Moreover, apart from that ruling, I find that there is sufficient uncontroverted evidence in the record to establish that Lumber Source, Inc. was the transferee of the assets of Lumber Sales, LLC, whether by formal journal entry or by appropriation, and that Lumber Source, Inc. is the continuation of Lumber Sales, LLC.

The Trustee in his motion for summary judgment also seeks entry of a judgment requiring that Lumber Source turn over its property to the Trustee for disposition and distribution in Lumber Sales' chapter 7 bankruptcy case. However, Lumber Source may have creditors who were not creditors of Lumber Sales, such as the loan provided to the business by the outside investor. Before a remedy may be fashioned, the interests of those entities must be considered. A preliminary hearing will be noticed by the court to explore this further.

Counsel for Plaintiff should lodge with the Court an order consistent with the foregoing. Specifically, that Plaintiff's motion for summary judgment is granted in part, and that the

Court finds that Defendant is the successor to debtor Lumber Sales, LLC and liable for the claims of its creditors and, by extension, to the Trustee.

FRANK R. ALLEY, III
Bankruptcy Judge